No. 45,370

New Hampshire Insurance Company, London & Lancashire Insurance, Ltd., Glens Falls Insurance Company, *Appellants,* v. Fox Midwest Theatres, Inc., a Delaware Corporation, *Appellee.*

(457 P. 2d 133)

Opinion filed July 17, 1969.

*J. H. Eschmann,* of Topeka, argued the cause, and *L. M. Ascough* and *John A. Bausch,* of Topeka, were with him on the brief for the appellants.

*Paul H. Niewald*, of Kansas City, Missouri, argued the cause, and *John C. Risjord*, of Kansas City, Missouri, and *Robert L. Webb, Ralph W. Oman*, and *Terry Bullock*, of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This litigation arose as the result of a fire in the Grand Theatre in Topeka on May 15, 1966, causing damage to the building. Plaintiffs are insurance companies licensed to issue fire insurance policies in Kansas, and have brought this action claiming a right of subrogation through their insured, the First National Bank of Topeka. Plaintiffs seek to recover from the defendant, Fox Midwest Theatres, Inc., the sum of $8,727.57, which constitutes the amount of loss plaintiffs were compelled to pay the insured bank under the terms of insurance policies then in effect. Defendant's liability is predicated on allegations in plaintiffs' petition that the fire and resultant damages were the result of the negligence of defendant's employees.

The defendant, as lessee, has been in possession of the theatre building under a lease agreement entered into on March 25, 1960, with the First National Bank of Topeka and other as lessors. Prior thereto a lease agreement with basically identical provisions had been executed on April 29, 1947. The present lessors and lessee are successors in interest to the original parties in the earlier agreement. On May 17, 1963, an extension agreement was executed by the lessors and lessee which extended the agreement of March 25, 1960, for a five-year term ending on June 30, 1971.

For clarity throughout the opinion plaintiffs will also be referred to as the insurance companies, the First National Bank of Topeka as the insured or lesssor, and defendant as the lessee.

After filing an answer, defendant moved for summary judgment, claiming that by virtue of the provisions of the lease agreement, plaintiffs were not entitled to recover against the defendant. Subsequent thereto, counsel were allowed to file additional evidentiary matters to be considered by the court, and also written briefs. Thereupon, the district court sustained the motion and entered judgment for the defendant.

Although plaintiffs argue that the case was premature for summary judgment, it seems apparent to us there was only a question of law for the court to determine—namely, interpretation of the lease

agreement in light of the undisputed facts as alleged in plaintiffs' petition, which, for purposes of the motion, must be taken as true. (See, *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 449 P. 2d 477.) Therefore, the question for determination in this court, just as in the court below, is whether or not the lease agreement of March 25, 1960, as extended, contained provisions which exculpated the defendant, Fox Midwest Theatres, Inc., as lessee, from any tort liability resulting from fire loss to the building because of the negligence of defendant's employees.

By the terms of the agreement the lease commenced June 30, 1961, and ended June 30, 1966, during which time the lease provided for rental payments totaling $87,439.80, payable in monthly installments of $1,458.33. The extension agreement executed May 17, 1963, extending the term to 1971, contemplated extensive improvements to the theatre in the amount of not less than $40,000, entirely at the expense of the lessee.

Other pertinent portions of the lease agreement are as follows:

"3. Lessee covenants and agrees that Lessee will keep and maintain, at Lessee's expense, the interior of the leased premises in good and sufficient repair, . . . *ordinary wear and tear and damage by fire or other casualty being expressly excepted;* . . .

. . . . . . . . . . . . . . .

"5. Lessors, at Lessors' expense, shall provide and maintain insurance in an amount of not less than eighty per cent (80%) of the value of the improvements on the leased premises against loss by fire, with extended coverage.

"It is understood and agreed that Lessors or Lessee shall have the right, at any time during the term hereof, to have the improvements or building constituting a part of the leased premises, appraised by some competent recognized insurance representative, to determine the adequacy of the insurance coverage then in force, and if the same is inadequate, according to such appraisal, the Lessors shall increase the insurance coverage so as to provide for adequate protection, and if the same is over-insured, according to such appraisal, Lessors may decrease the amount of coverage thereon. . . .

"6. In the event said leased premises or any part thereof be so damaged by fire, Act of God, inevitable accident or structural defects, that the same cannot be used for theatre purposes, Lessors shall rebuild, repair or replace the same, at Lessors' expense, in such manner that the same shall be of the same character and at least of equivalent value to said leased property prior to such damage. In the event Lessors shall not commence said repairs or replacement within sixty (60) days following said damage . . . then Lessee shall have the right, within an additional period of sixty (60) days . . . to elect in writing delivered to Lessors, either (a) to rebuild, repair or replace the leased premises, or (b) to terminate this lease as of the date of such damage.

"*In case Lessee elects the aforesaid option (a), Lessors agree to make avail-*

able to Lessee the proceeds of all insurance received by Lessors on account of such damage, which shall be utilized by Lessee in payment of the cost of restoration, but if the cost of such rebuilding exceeds the amount of the insurance proceeds, Lessee shall not be reimbursed in any manner for such excess. . . . In case Lessee elects the aforesaid option (b), this lease shall terminate as of the date of such damage and thereafter shall be of no further force or effect whatsoever.

. . . . . . . . . . . . .

"10. Lessee covenants and agrees that, in the operation and maintenance of Lessee's business to be carried on in said leased premises, Lessee will fully comply with all rules, regulations and laws of any Governmental authority, whether Municipal, State, or Federal, with respect to the occupancy and use of said leased premises by Lessee; and *Lessee shall not use leased premises or permit the same to be used in any manner to void the insurance maintained by the Lessors or to increase the rate of said insurance.*

. . . . . . . . . . . . .

"15. Lessee now occupies the leased premises under a certain lease dated April 29, 1947, between The National Theatres Corporation (which has been succeeded in ownership of the leased premises by the Lessors herein), and Fox Kansas Theatre Corporation, a Delaware corporation (which has been succeeded by Lessee herein); said lease which is, in effect, being extended by this lease, is ratified, confirmed and approved in all respects by the parties hereto as successors to the original Lessor and Lessee. . . ." (Emphasis added.)

The record is not clear by whom the lease was prepared. From paragraph 15 above, and an affidavit of an official of the lessor bank, the provisions are identical to those of the 1947 lease between the predecessor lessor and lessee.

The record discloses the insurance policies involved were standard fire insurance policies and covered the theatre building for loss by fire and other casualties, the contents of the building, and any improvements contemplated to be made by the lessee during the term of the lease. The policies contained a subrogation clause which provided the insurance would not be invalidated should the insured waive in writing *prior to any loss any or all right of recovery against any party for loss occurring to the property.* The fire loss in question was covered by the policies and was fully paid by the plaintiff insurance companies.

The trial judge, in his memorandum opinion, set forth the respective positions of the parties which, in substance, are as follows:

Defendant, in support of its motion for summary judgment, contends: (1) that in consideration of the rather substantial improvements in the property to be made by the lessee and the rental payments, the lessor agreed to carry adequate fire insurance to

protect the improvements in which both parties had an insurable interest; (2) that under paragraph 3 of the lease, the lessee's obligation to maintain the interior of the premises in good condition expressly excepted damage by fire or other casualty; (3) that by reason of paragraph 6 of the lease, the First National Bank, plaintiffs' insured, was obligated to collect the insurance and either restore the premises for the benefit of Fox Midwest Theatres, Inc., or pay the insurance proceeds to lessee so it could restore them, regardless of the cause of the fire; and (4) that the bank expressly waived any right to assert liability against lessee for its negligence in causing a fire, and that the insurance companies, as subrogees of the bank, stand in no better position.

Plaintiffs, on the other hand, contend that contracts for exemption of liability from negligence are not favored by the law, and that they are strictly construed against the party relying on them; that there is no express provision in the lease whereby the parties agree to exonerate the defendant-lessee from its negligence, and under the strict construction rule, a claim of exemption from liability for negligence should be denied.

The basis of the trial court's decision sustaining the defendant's motion for summary judgment is reflected in a well-analyzed, comprehensive opinion which reads:

". . . The question of law raised in this case on the undisputed facts is one of first impression in Kansas. There is authority to support both positions throughout the United States. . . . In reaching a decision in this case the Court has recognized the following basic principles of law:

"1. The right of the plaintiff insurance companies as subrogees under the insurance policies to proceed against a third person causing the loss does not rest upon any relation of contract or privity between the insurer and such third person but arises out of the contract of insurance and is derived from the insured alone. Consequently the insurer can take nothing by subrogation but the rights of the insured, in this case the lessor, and is subrogated to only such rights as the insured possesses. In this regard see 29 Am. Jur., Insurance, Section 1720 and *Casualty Co. v. Power Co.*, 99 Kan. 563, 162 P. 313.

"2. Under the law of Kansas independently of express covenant, the law imposes on a tenant the obligation to return the premises to the landlord at the end of the term unimpaired by the negligence of the tenant. In the absence of a lease agreement to the contrary a lessee is liable to a lessor for damages for destruction of the premises by fire due to his negligence. In this regard see *Salina Coca-Cola Bottling Corp. v. Rogers*, 171 Kan. 688, 237 P. 2d 218, and *In re Estate of Morse*, 192 Kan. 691, 391 P. 2d 117.

"3. A covenant in a lease to exempt or exonerate one from the consequences of his own negligence is a valid clause and enforceable between the parties

themselves. Such exculpatory or exemption clauses were recognized and held enforceable in *Grain Co. v. Railway Co.*, 94 Kan. 590, 146 P. 1068; *Riddle Quarries, Inc., v. Thompson,* 177 Kan. 307, 279 P. 2d 266. See also the recent opinion in *Talley v. Skelly Oil Co.* . . . [199 Kan. 767, 433 P. 2d 425]. The Talley case is of particular interest here because it involved an exculpatory clause in a lease which was upheld by the court as a valid clause and enforceable between the parties.

"Considering the lease in its entirety the Court has construed its provisions as constituting an agreement of the parties that *the lessor should assume the duty of purchasing fire insurance on the leased premises to protect the interests of both the lessor and the lessee and that such insurance should cover any loss by fire without regard to the cause thereof and without regard to the negligence of the lessee.*

"Similar leases have been construed in other jurisdictions. The pertinent cases are cited by counsel in their briefs. From a reading of all these cases the Court has concluded that the trend of modern case law is definitely to construe the 'exemption of fire' clauses as an exculpatory provision relieving the lessee from liability for his own negligence. Under the more recent cases the two essential elements to the exculpatory construction are (1) the existence of the exemption of loss by fire and (2) the existence of fire insurance on the premises paid for by the lessor. All of the cases are thoroughly discussed and analyzed in *Rock Springs Realty, Inc. v. Waid,* 392 SW 2d 270, [15 A. L. R. 3d 774], decided by the Supreme Court of Missouri in 1965.

*"The real problem in these cases is to determine the intention of the parties.* It seems to this Court reasonable to assume that when a prospective lessor and lessee sit down together to draw up the terms of a complicated lease the question of fire insurance would almost always arise. Who should procure it and who should pay for it? The parties contemplate that any insurance whether purchased by the lessee or the lessor is purchased for the benefit of both parties and the proceeds of any recovery under the policy should be applied to the restoration of the premises so that the lease may continue in effect in accordance with its original provisions. At the time an agreement in regard to fire insurance is finally reached, the lessor and lessee would normally assume that there is coverage by the insurance company for the benefit of both parties regardless of the cause or origin of the fire. Such an intention should be found especially where the lease contained provisions such as are contained in the lease before the Court and which have been set forth in the statement of facts above.

"In the present case the lessee covenants and agrees in paragraph 3 that he will keep and maintain the interior of the leased premises in good and sufficient repair. . . . *ordinary wear and tear and damage by fire or other casualty being expressly excepted.* The lease then provides in other sections for the *purchase of fire insurance by the lessor to protect the rights of both parties.* Certainly in view of these specific provisions the parties intended to be protected by fire insurance which the lessor was obligated under the lease to provide for the protection of the lessee.

"For the reasons set forth above the motion of defendant for summary judgment is sustained. . . .'" (Emphasis added.)

While the question presented in this case has been litigated in other jurisdictions with divergent results, the recent trend of the cases is to construe leases containing similar provisions as relieving the lessee from negligently caused fires by it or its employees. For a compilation and discussion of the decisions, see Anno. 15 A. L. R. 3d 786; 6 K. L. R. 98; 5 DePaul L. Rev. No. 2, p. 305; Ill. L. F., Vol. 1956, p. 301; 18 Ohio St. L. J. 423; and 33 N. Y. U. L. Rev. 585.

Plaintiffs' main argument centers on the proposition that in determining whether an exculpatory agreement exists, courts are bound to apply the rule of strict construction, and when that rule is applied to the instant lease, the lessee is not exempted from liability for fires caused by the negligence of its employees. While in our recent case of *Talley v. Skelly Oil Co.,* supra, we said that exculpatory contracts are not favored in the law and are to be strictly construed, we recognized that exculpatory agreements voluntarily entered into by parties standing on an equal footing are enforceable as between the contracting parties themselves.

The primary rule in construction of any contract is to ascertain the intent of the parties, and such intent may best be determined by looking at the language employed and taking into consideration all the circumstances and conditions which confronted the parties when they made the contract. (*Stevens v. Farmers Elevator Mutual Ins. Co.,* 197 Kan. 74, 415 P. 2d 236; *Francis v. Shawnee Mission Rural High School,* 161 Kan. 634, 170 P. 2d 807; *Berg v. Scully,* 120 Kan. 637, 245 Pac. 119.)

The rule of strict construction which plaintiffs so strongly urge in support of their position must give way where it is plain that such construction of a contract does not convey the true intention of the parties. In discussing a similar principle to the effect that an exemption of a lessee for negligence must be "clearly and explicitly stated," the Missouri court, in *Rock Springs Realty, Inc. v. Waid,* supra, said:

". . . The principle stated is sound when properly applied, but in a case such as the present one the intention of the parties must be ascertained from the whole lease, including its provisions concerning insurance. In other words, every case like the present one must be decided on its own facts and on the actual terms of the lease. . . ." (p. 274.)

The rule of strict construction does not require that the language used be strained or distorted in order to exclude provisions which the parties clearly intended to bring within its scope. More specifically, the requirement that an exculpatory contract be strictly con-

strued means simply that the court will not extend its terms to situations not plainly within the language used. But at the same time, such contracts are to be fairly and reasonably construed and will not be given such a narrow and strained construction as to exclude from their operation situations plainly within their scope and meaning.

We, like the trial court, do not believe the rule of strict construction is available to thwart or defeat the obvious intent of the parties to the lease agreement. By the provisions of the lease the parties contemplated that the rental payments made by the lessee apply to the cost of insurance, which was the obligation of the lessor. The terms employed manifest an intention that neither party would have to bear a loss to the building caused by fire, provided, of course, that the provisions pertaining to fire insurance had been complied with and the loss was one which was covered by such insurance. In this respect, the lease is somewhat akin to a contract of indemnity, both parties agreeing that any loss should be paid by the insurance company and the proceeds applied toward restoration of the leased premises. The practical effect of such an agreement exonerates the lessee from liability to the lessor for a negligently caused fire, since such loss was covered by the insurance taken out by the lessor for the benefit of both.

In the landmark case of *General Mills v. Goldman* (8th Cir. 1950), 184 F. 2d 359, cert. denied 340 U. S. 947, 71 S. Ct. 532, 95 L. Ed. 683, a similar lease was involved. There, among other things, the lessee agreed to return the premises to the lessor at the end of the term in as good condition as they were in, "loss by fire and ordinary wear excepted." The lease did not contain express provisions regarding the obligation to insure; but evidence was admitted showing there was an understanding between the parties that the lessor carry the insurance, which it did. The court held, in substance, that it was intended by the parties that the rents should pay the premiums, that any fire loss would be satisfied from the insurance, and that the exception "loss by fire" exempted the lessee from liability for any fire loss which was ordinarily covered by insurance. The court, in effect, equated the lease to a contract of indemnity in respect to the insurance and rejected the applicability of the rule of strict construction, saying:

". . . [T]here is no public policy in Minnesota inimical to resort to fire insurance covering loss by fire occurring with or without negligence and there

is no reason for applying any 'strict construction' to a lease entered into in contemplation of having a fully appreciated and guarded against fire risk carried by an insurance company. The undisputed evidence in this case presents exactly that situation. The landlords here agreed that the tenant should not be liable to pay for 'loss by fire' because it was understood between them that fire insurance would be taken out and a fire insurance company would be required to pay for any 'loss by fire' occurring on the premises during the term of the lease. Such insurance company would be required to pay whether the 'loss by fire' was caused by negligence or not as fire insurance universally covers loss by fire occurring from the kind of negligence here involved. The premiums to fire insurance companies are based on actuarial computations of fire losses so occurring. The policies are standardized and we are informed of no other kind of fire insurance in use in this country.

"When the lease here is so read and understood the agreement of the lease is simple, normal and reasonable and such as intelligent men would be expected to agree upon. The fire which occurred and the consequent loss were within the contemplation of the parties and was covered as they meant that it should be by the fire insurance." (pp. 364-366.)

The court expressed a similar view in *Mayfair Fabrics v. Henley, et al.,* 97 N. J. Super. 116, 234 A. 2d 503, declining to determine the case on the basis of strict construction.

In another leading decision, *Cerny-Pickas & Co. v. C. R. Jahn Co.,* 7 Ill. 2d 393, 131 N. E. 2d 100, in which the lease provided that the lessee should keep the premises in repair and redeliver them upon termination in good condition, "loss by fire and ordinary wear excepted," and that the lessor should pay for fire insurance but lessee should pay for any increase in rates due to the nature of its business, the court stated:

"The argument most strongly urged against exoneration of the lessee is that the lease does not in so many words provide that the lessee be free from liability for fires resulting from its own negligence. Of course, if the lease contained such an express provision, that would be the end of the matter. But because the contingency was not covered by express language, it does not follow that the instrument may not, when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That determination is to be made upon a consideration of the instrument as a whole.

". . . In the absence of any contrary expression in the lease, the lessee is not liable to the lessor for damages to the premises from fire which is not the result of his own negligence. . . . Therefore, unless this clause of the lease exempts the lessee from liability for loss by fire resulting from his own negligence, it does no more than restate the lessee's common-law obligation. . . ." (pp. 396, 397.)

The court concluded that from the lease as a whole the lessee was not to be held liable for loss by fire, regardless of the cause thereof, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire.

When the provisions of the lease in the instant case are examined in their entirety, the over-all intention of the parties seems clear. They agreed that the lessor should purchase fire insurance protecting the improvements on the premises and providing "for adequate protection" of the building itself. Either party could at any time have the premises appraised and the insurance coverage adjusted to be compatible with the results of such appraisal. The lessee was required to subordinate its activities in order not to void the insurance or increase the rates. Further, and of special significance, are the terms providing that if the premises were damaged by fire, the lessor would "rebuild, repair or replace the same at Lessor's expense;" but should the lessor fail to make such repairs, the lessee was given the option of rebuilding or repairing the premises, and if such option were exercised, the lessor agreed "to make available to lessee the proceeds of all insurance received by lessor on account of such damage." The true implication of these provisions is that the landlord's obligation to insure was an obligation intended to inure to the benefit of both parties. We believe it highly illogical to think that the parties would provide that the proceeds of insurance could be made available to the lessee for purpose of making repair, and at the same time the lessee be required to reimburse the insurer for a negligently caused fire. Such an interpretation would defeat the manifest intention of the parties that insurance was for both the lessor's and lessee's benefit.

Where, as here, the lease contemplated that any insurance was for the benefit of both parties, recovery by the insurer from the lessee, if permitted, would indeed be a windfall. For that matter, there is nothing in the agreement disclosing an intent that the lessee should purchase insurance for protection of the premises against its own negligence or that of its employees. In *Rock Springs Realty, Inc. v. Waid,* supra, the court noted:

". . .—that if the insurer is permitted to recover by way of subrogation against the lessee, 'the insurer gets a windfall in that it would have had to stand the loss had it been the lessor who was negligent, although the cost of the insurance ultimately is borne by the tenant in either case because included in the rent.' In other words, if the lessee had been the named insured or a co-

insured, no contention based on its negligence could have been made in any event. . . ." (p. 277.)

The lease provisions in the *Rock Springs* case were virtually identical to those in the instant lease, including a provision similar to the one here that the lessee agreed to maintain the interior of the premises in good repair "damage by *fire* or other casualty being expressly excepted." We subscribe to the reasoning as set forth in the Missouri court's opinion, and particularly with its conclusion expressed in the following language:

". . . We conclude that the intent of the parties here was that fire insurance should be carried by the lessor in adequate amounts for the benefit of both parties and that the exemption from 'loss by fire' included all fires except those which, generally speaking, would be classed as arson. No reasonable businessman so contracting as a lessee would understand this lease to be one exempting him only for 'loss by fire' *not* caused by his negligence; rather, he would interpret it to mean that he was exempted from liability for all fires which could normally be (and were) insured against by the usual fire insurance policy. . . ." (p. 278.)

The judgment is affirmed.