[Civ. No. 12073. Third Dist. May 5, 1970.]

KENNETH W. GORDON et al., Plaintiffs and Appellants, v.
J. C. PENNEY COMPANY, Defendant and Respondent.

**COUNSEL**

Long & Levit, Bert W. Levit, John B. Hook and David R. Harrison for Plaintiffs and Appellants.

Fitzwilliam, Memering, Stumbos & DeMers and John D. Stumbos for Defendant and Respondent.

**OPINION**

**PIERCE, P. J.**—Plaintiff-appellants (Gordons) are the owners of Marysville store premises. Those premises were leased from the Gordons by defendant-respondent J. C. Penney Company (Penney). The written lease was drawn by Penney. On July 9, 1964, the premises were damaged by fire. The agreed insured loss was $174,645.52. Gordons filed an action against Penney to recover those and other losses. The complaint alleged that the damage was due to Penney's negligence. Penney's answer included an affirmative defense. It asserted the release of liability of Penney under the "damage" and "insurance" clauses of the written lease.

The "damage" clause was an agreement by Gordons to "repair and/or rebuild" the leased premises in the event of any loss from fire or any other cause regardless of the extent of such loss.[1]

The "insurance" clause obligated Gordons to keep the leased premises fully insured against loss or damage by fire "and it is agreed that such insurance shall be carried for the mutual benefit of Landlord and Tenant . . . ."[2]

After the execution of the lease, and in accordance with its terms, Gordons obtained fire insurance. Gulf Insurance Company (Gulf) was its insurer. Gulf paid to Gordons the full insured value of the loss.

---

[1]"DAMAGE CLAUSE. That if the premises hereby demised shall, previous to the beginning of the term hereof, or during the term hereof, be damaged or destroyed by fire or any other cause whatsoever, Landlord shall and will forthwith proceed to repair and/or rebuild the same, including any improvements or betterments made by the Landlord or Tenant, upon the same plan as immediately before such damage or destruction occurred . . . ."

[2]"INSURANCE. That Landlord shall keep the building of which the demised premises are a part or the whole insured against loss or damage by fire to the extent of the full insurable value thereof, including all improvements, alterations, additions and changes made by the Landlord or Tenant, and it is agreed that such insurance shall be carried for the mutual benefit of Landlord and Tenant, and all moneys collected from such insurance shall be used toward the full compliance with the obligation of the Landlord assumed under the paragraph of this lease entitled 'Damage Clause'.

"If Landlord carries plate glass insurance, it shall be written in a manner to cover both Landlord and Tenant."

The case was tried to the court. The trial was bifurcated. First tried was the issue raised by the complaint that the fire damage was caused by Penney's negligence. The trial court found that it was so caused. Issues affecting Gordons and Penney were the subject of a settlement between those parties. Gulf became the real plaintiff contending it was entitled to recover its outlay to Gordons for insurance upon the theory that it had become subrogated to a right enjoyed by Gordons against Penney for the latter's negligence. On this issue no evidence was taken.[3] The court found that Penney was, under the terms of its lease with Gordons, absolved from liability to Gulf. That insurer had no subrogation right because Gordons, its subrogor, had had no right against Penney.

## THE CHAPIN CASE

Both parties rely, without recourse to extrinsic evidence, upon the language of the lease. Specifically, reliance is upon just two of the clauses of the lease—the "damage" repair clause and the "insurance" clause. (See footnotes 1 and 2, *supra*.) Effectually, except for two differences, these clauses here are the same as those in *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613 [11 Cal.Rptr. 634].

There, as here, the lessor had agreed to maintain fire insurance to cover the value of the leased building. A fire occurred caused by the lessee's negligence. It was the lessor's position that the parties had not intended by lessor's agreement to carry fire coverage to include fires for which the lessee was negligently responsible. To do so, lessor contended, would be contrary to the policy of Civil Code section 1668.[4] In reply, lessee contended the provision was an agreement by lessor to provide mutual protection by purchase of insurance against insurable losses, the premiums for which were to be payable by lessor. ■ Notwithstanding Civil Code section 1668, losses caused by an insured's negligence are insurable and another may agree to pay the premiums on such insurance. (See cases cited in *Chapin, supra,* on p. 616.) The trial court accepted lessee's contention in *Chapin,* and the appellate court affirmed. The latter court reasoned that it was obvious from a reading of the lease that the insurance clause had been intended

---

[3] In the interest of precise exposition answers by Penney to interrogatories propounded by Gordons during discovery proceedings were admitted by stipulation. They were not thereafter adverted to by either party in brief or argument. Reliance by both parties is upon the provisions of the lease and upon the law claimed applicable thereto.

[4] Section 1668 reads as follows: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

as mutual protection for both lessor and lessee which, absent such insurance, could not have been effected.

One of the two differences between the facts in *Chapin* and the facts in the instant case is that here the parties expressly stated the insurance was to be for their mutual benefit. But in *Chapin* mutuality was inferred from the nature and purpose of the agreement.

 It is upon the second difference that Gordons base their whole case; in *Chapin* the lessee had agreed to restore and repair fire damage to the leased premises. Here lessor had assumed that obligation.

According to Gordons that is a distinguishable difference. It explains, they say, the meaning of a lease provision calling for the purchase of insurance for the "mutual" benefit of both lessor and lessee in terms other than insurance covering loss caused by lessee's negligence. Insurance, it is urged, is still for the benefit of lessee even though it does not protect him against his own negligence because it affords a fund out of which the insured premises can be restored—even though lessee ultimately has to replenish that fund by refunding to the insurance company its original outlay to lessor in payment for the loss.

This court does not accept that as a reasonable interpretation of the intent of the lessee in drafting the "damage repair" and "insurance" clauses of the lease. Restoration of the leased premises would indeed be small comfort to a lessee who ultimately had to bear the restoration expense. Insurance so providing has scant "mutual" benefit.

Effectually, the same argument had been advanced in *Chapin*. There it was argued that had it been the intention of the parties to give the lessee an interest in the insurance proceeds the lessee would have had some voice in determining whether to repair or rebuild after a fire loss; that the matter of repairing or rebuilding was, under the *Chapin* lease, wholly within the option of the lessor. (Under the lease before this court that matter was almost wholly within the option of lessee, Penney.) But even under the *Chapin* rebuilding clause, the court answered that argument by saying (on p. 619 of 189 Cal.App.2d): "The argument is not sound. The insurance coverage sought by a lessee is that which will protect him against loss."

A fire insurance policy which does not cover fires caused or contributed to by the insured would be an oddity indeed. As we stated in *Sacramento-Yolo Port Dist.* v. *Cargill of California, Inc.* (1970) 4 Cal.App.3d 1004, 1012 [84 Cal.Rptr. 822]: "Otherwise, few insured fire claims would be paid without controversy and most would require litigation." For that reason we do not deem that a policy "for the benefit" of a lessee excludes coverage for fires caused by his negligence. We would not construe that to

have been the intent of the parties here without a provision in the lease expressly so providing.

In *Cargill, supra,* there was an express waiver subrogation in the insured lessor's policy. That is not a significant factor. ■ "A 'subrogation' as applied to an insurer [here Gulf] is its right to be put in the position of its insured against third parties legally responsible to the insured . . . ." (*Id.* p. 1010.) Gulf's right rested upon Gordon's right. ■ But Gordons did not have a right, they owed an obligation—to purchase fire insurance for the benefit of Penney. The breach of that obligation created an equitable lien in Penney's favor on the insurance proceeds. (*Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc., supra,* at p. 617; *Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 718, 724 [62 P.2d 735].)

We need not comment, either to approve or disapprove, *Poslosky* v. *Firestone Tire & Rubber Co.* (Mo. 1961) 349 S.W.2d 847, relied on by Gordons. The provisions of the insurance clause of the lease there involved, set forth in full in the opinion, did not state that the lessor was to keep the leased premises insured *for the benefit* of the lessee.

Judgment is affirmed.

Friedman, J., and Janes, J., concurred.

A petition for a rehearing was denied June 1, 1970, and appellants' petition for a hearing by the Supreme Court was denied July 1, 1970.