# Richmond

THE MONTEREY CORPORATION v. JOHN L. HART, EXECUTOR AND TRUSTEE OF THE ESTATE OF MARGARET HART BARNES, DECEASED.

April 23, 1976.

Record No. 750458.

Present, All the Justices.

*Charles L. Williams, Jr. (Gentry, Locke, Rakes & Moore*, on brief), for plaintiff in error.

*W. H. Jolly (Kime, Jolly, Clemens & Canterbury*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

This case involves an action by a landlord against the executor of a deceased tenant for fire damage to leased premises allegedly caused by the tenant's negligence. Summary judgment was entered in favor of the lessee's executor upon the ground that the provisions of the lease, as a matter of law, exonerated the tenant from liability for loss due to fire.

The Monterey Corporation operates the Patrick Henry Hotel in Roanoke and in the course of its business leased an apartment in the hotel to Margaret Hart Barnes and her husband. The corporation alleged that thereafter Mrs. Barnes, now deceased, negligently and carelessly caused the interior of the apartment to be consumed by fire and that its hotel property was damaged in the amount of $50,-000. The executor of the decedent's estate denied liability, required production of the lease agreement between the parties, and then moved for summary judgment "based on paragraph Fourth of the Lease Agreement".

Paragraph four of the lease provides, in pertinent part:

"Lessee will keep, and at the expiration hereof deliver up, the premises in as good order and condition as the same now are, reasonable wear and tear and damages by accidental fire excepted. . . ."

Appellee says, and the trial court agreed, that this clause, considered along with the remainder of the lease, evidenced an intention to relieve the lessee from liability for all fires except where arson is involved. In effect, he claims that if the Monterey Corporation had intended the contrary, the exception should have been limited not to accidental fire, but to fire caused without negligence of the tenant.

The appellant argues that a fire caused by the negligence of a tenant is not the "accidental fire" excepted, and that had it been intended that the tenant was to be exonerated for fires caused by the tenant's negligence, such intent should have been clearly stated.

We observe that the lease, executed by the parties on a printed

form, with numerous protections to the lessor, is of the type sometimes designated as a "landlord's lease". The lease was admittedly prepared by the lessor, and therefore any ambiguities must be resolved in favor of the lessee.

■ Looking to the terms of the lease, it is clear that the parties contemplated that the Patrick Henry Hotel might be damaged or destroyed by fire. The first reference in the lease to that possibility is paragraph four concerning the condition of the apartment at the expiration of the lease. Admittedly, and in the absence of any contrary provision in the lease, a lessee is not liable to a lessor for damage to the premises resulting from a fire which is not the consequence of the tenant's own negligence. Therefore, unless paragraph four exempts the lessee from liability for loss by fire resulting from her negligence, it does no more than restate her common law obligation.

■ Appellant relies upon the proposition that a lessee is liable for damage resulting from his intentional or negligent act and, under the provisions of Code § 55-211, for any waste that he commits. Furthermore, it interprets Code § 55-226 to mean that a tenant is liable to the landlord for the negligent destruction of the leasehold. Code § 55-226 was enacted to abrogate the harsh common law rule which placed liability for all loss or damage to the leased premises on the lessee, regardless of fault. In *Richmond Ice Co.* v. *Crystal Ice Co.*, 103 Va. 465, 49 S. E. 650 (1905), we observed that the section (then § 2455) changed the common law rule so as to allow a reduction of the rent on account of the destruction of buildings where they are destroyed without fault or negligence on the part of the tenant.

We agree with appellee that Code § 55-226 is itself exculpatory in nature and does not, as contended by Monterey, create or impose an additional liability upon a tenant. We further agree that the language, ". . . .unless there be other words showing it to be the intent of the parties that he should be so bound", found in this code section, indicates that the court must look to the ultimate intention of the parties in defining their respective obligations and liabilities.

■ Paragraph five of the lease also recognized the possibility that the apartment might be damaged by fire and provided that if the apartment could not be made suitable for occupancy within thirty days after the fire, the rent would cease during repairs; that if such repairs required more than thirty days the tenant had the option of vacating the premises; but that there should be no such cessation of rent if the damage shall have been the result of negligence, default or willful act

of the tenant or the tenant's agents or employees. Paragraph five is consistent with Code § 55-226 for each absolves a tenant from responsibility for payment of rent where a leased building is destroyed by fire without fault or negligence on the part of the tenant. Moreover, this paragraph does not impose a responsibility or obligation on the tenant to rebuild or reconstruct the premises.

Further evidence that the parties contemplated the possibility of a fire is paragraph twelve of the lease which provided:

> "Lessee will not do or permit anything to be done in the premises, or bring or keep anything therein, which will in any way increase the rate of fire insurance on the building, or on property kept therein, or conflict with the laws relating to fires, or with the regulations of the fire department, or with any insurance policy upon the building or any part thereof, or with any of the rules and regulations of the Board of Health."

This provision, clearly inserted as a protection for the landlord, prohibited any action by the tenant which would increase the cost to the landlord of fire insurance coverage on the building, or jeopardize in any way the validity of any fire insurance policies covering the building.

In paragraph fourteen the landlord reserved the right to enter the apartment of the tenant to examine and inspect the same, and to make such repairs and alterations as were deemed necessary for the safety and preservation of the building. Thus, the landlord recognized that it was its duty to provide for the safety of the building, and to do whatever was necessary to preserve its property.

Paragraph nine of the lease placed squarely upon the lessee the responsibility to protect herself from any and all hazards and liabilities to which she might be exposed as an occupant of the premises. The lessor required the lessee to absolve it of any liability or responsibility for any accident to the lessee or to any occupant of the premises or for any property damage or personal injury resulting from any cause whatsoever.

We find no provision in the lease either requiring the lessee to be responsible for damage to the building from fire caused by her negligence or requiring her to carry fire insurance on the premises for the benefit of the lessor or for her own protection. If the construction urged upon us by the lessor is a proper one, it would be necessary for both parties to a lease to carry fire insurance, if they are to be pro-

tected. The lessee would have to insure the building against fires due to his own negligence and the lessor would have to insure against fires due to other causes.

Appellant says it is fundamental that a tenant is liable for damage resulting from his intentional or negligent acts, and that here, the lease contains no exculpatory clause freeing the tenant from liability for fires resulting from her own negligence. Obviously, if the lease contained such an express provision it would control. However, this contingency was not covered by express language, and we must therefore look to the provisions of the lease as a whole to determine what the parties themselves intended.

In the final analysis the decision of this case depends upon the construction that we give to the words "accidental fire" found in paragraph four of the lease. Monterey contends that the term does not contemplate a fire caused by the negligence of a tenant but rather contemplates one which results solely from factors other than the negligence or fault of a tenant. Appellee's position is that the reasonable and normal meaning of the term "accidental fire" includes all fires, regardless of their origin, and whether negligent or otherwise.

Monterey relies principally on *Winkler* v. *Appalachian Amusement Co.*, 238 N. C. 589, 79 S. E. 2d 185 (1953). In that case the plaintiff leased to defendant a movie theatre building. During the term of the lease a popcorn popper caught fire and the theatre building was extensively damaged. Plaintiff alleged that the fire was caused by the negligence of tenant. The defendant sought to escape liability under the terms of a lease which included a provision that required the lessee to return possession of the premises to lessors in as good order, repair and conditions as at present, ordinary wear and tear excepted, and damage by fire or other casualty excepted. The court considered the overall relationship between the landlord and tenant and decided that the terms of the lease did not absolve a negligent tenant of liability. It is noted here that the court in *Winkler* relied strongly on an opinion by the Illinois Court of Appeals, reported at 347 Ill. App. 379, 106 N. E. 2d 828 (1952), which was subsequently reversed and wholly repudiated in an opinion by the Supreme Court of Illinois in *Cerny-Pickas & Company* v. *C. R. Jahn Company*, 7 Ill. 2d 393, 131 N. E. 2d 100 (1956). There it was held that contracts exempting lessees from their own negligence are valid as between private persons where private interests are involved; that a lessee is absolved of liability even though there is no specific mention of an exemption if all

the provisions of a lease show an intent to exempt the lessee from loss occasioned by a negligent fire; that the word "fire" as normally used includes all fires; and that in the case there under review the parties contemplated that lessor would carry insurance to cover all losses from fire in lieu of any liability on the part of lessee.

The exception clause in *Slocum* v. *Natural Products Co.*, 292 Mass. 455, 198 N. E. 747 (1935), provided for the return of the premises in good condition and repair, "damage by fire or unavoidable casualty only excepted". The court held that the clause operated to excuse the tenant from liability for damage caused either by fire or by unavoidable casualty since, if it had been intended that the fire must also be an unavoidable casualty, there would have been no occasion for mentioning fire at all. In its opinion the court said:

> "There are sound reasons why a lessee who has no permanent interest in the property should seek relief from the burden of repairing or restoring the premises after fires in geneal, at least if not intentionally caused by himself. We think the exception includes fires resulting from negligence of the lessee, and therefore in the popular sense 'accidental.' " 292 Mass. at 457, 198 N. E. at 748.

*See also Day Wood Heel Co.* v. *Rover*, 123 Ohio St. 349, 175 N. E. 588 (1931).

In *Rock Springs Realty, Inc.* v. *Waid*, 392 S. W. 2d 270 (Missouri, 1965), the tenant agreed to surrender the leased premises in good condition "loss by fire, casualty, Providence and deterioration excepted". The lease there contained many of the same provisions found in the lease being examined in the case under review. The building which was the subject of the lease was damaged by fire negligently caused by an agent of the tenant. The court held that the provisions of the lease absolved the tenant of any liability for the fire loss. The court pointed out a provision in the lease which prohibited a tenant from doing anything that would cause either a cancellation of the fire insurance policy or an increase in rates and which required the tenant to comply with all regulations of the fire department or with any insurance policy upon the building. The court concluded that in view of such provisions the exemption from "loss by fire" included all fires except those which, generally speaking, would be classed as arson. The court said: "No reasonable businessman so contracting as a lessee would understand this lease to be one exempting him only for 'loss by fire' *not* caused by his negligence, he would interpret it

to mean that he was exempted from liability for all fires which could normally be (and were) insured against by the usual fire insurance policy." 392 S. W. 2d at 278.

In *General Mills* v. *Goldman*, 184 F. 2d 359 (8th Cir.), *cert. denied* 340 U. S. 947 (1951), the court held, in light of the circumstances of that case, that the exception of "loss by fire" exempted the lessee from liability for any fire loss which is ordinarily covered by insurance, as was the fire there. The court also said:

> "[T]here is no public policy in Minnesota inimical to resort to fire insurance covering loss by fire occurring with or without negligence and there is no reason for applying any 'strict construction' to a lease entered into in contemplation of having a fully appreciated and guarded against fire risk carried by an insurance company." 184 F. 2d at 364.

The recent tendency seems to be in favor of the non-liability of the tenant where a fire occurs due to his negligence. *See* 33 N. Y. L. J., p. 535.

And in *Rock Springs Realty, Inc.* v. *Waid, supra*, the court quoted the commentator in 18 Ohio St. L. J., pp. 431, 432 (1957), as follows:

> " 'The trend of the law is definitely to construe the exception of fire clauses as an exculpatory provision, relieving the lessee from liability for his own negligence. The two opposing rules of construction, construing a lease most strictly against the lessor, or most strictly against an exculpatory contract, have merely been used by the courts as a make-weight factor in support of their particular conclusions. The two essential elements to the exculpatory construction are: (1) the existence of an exception of loss by fire and (2) the existence of fire insurance on the premises paid for by the lessor. * * * From a practical business point of view it is not likely that a manufacturing concern would intend only to protect itself from a[n] accidental loss and not loss due to its own negligence. Where it is clear that the parties contemplate insurance to be paid for by the lessor it is logical to conclude that they intend the lessee to pay for the insurance through rent payment. It would be an undue hardship to require a tenant to insure against his own negligence where he is paying for the fire insurance which covers the premises in favor of the lessor. The lessee should not be treated as a negligent third party subject to subrogation rights, but should

have the benefit of the insurance policy. Such a policy contemplates a potentially negligent occupant and a right of subrogation would be a windfall to the insurer.' " 392 S. W. 2d at 277-278.

The only distinguishing feature in the exception clause involved here are the words "accidental fire". In Black's Law Dictionary, 31 (4th ed. 1951), the word "accidental" is defined as "Happening by chance, or unexpectedly; taking place not according to usual course of things; casual; fortuitous". The word "accident" is variously defined in *Black's,* including "a mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally. . . ."

There are varying degrees of negligence and its existence is usually a question of fact. A collision occurs between vehicles, and it is referred to as an "accident". Normally, negligence on the part of one or both parties is involved. It can be safely said that few fires are set intentionally. Equally few are not the result of carelessness, lack of foresight or of negligence on the part of some person.

When we consider the lease as a whole and look at the circumstances surrounding its execution, we think the conclusion inescapable that the intent of the parties was that fire insurance on the building should be carried by the Monterey Corporation in adequate amounts for its protection. We think it equally clear that the landlord expected its tenant to carry insurance to protect her personal property from loss or damage by fire.

" 'In the construction of contracts, the rule is stated by Judge Burks, in *Bank of Old Dominion* v. *McVeigh,* 32 Gratt. (73 Va.) 530, as follows: "As said in the opinion in *Talbot* v. *Richmond & Danville R. R. Co.* (3 Va. Law Journal 486), to ascertain the intent of the parties is the fundamental rule in the construction of agreements (*Canal Co.* v. *Hill,* 15 Wall, 94 [21 L. Ed. 64]); and in such construction courts look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract

occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of words and of the correct application of the language to the things described." ' " *Town of Ashland* v. *Newman,* 163 Va. 500, 507, 175 S. E. 724, 726, 727 (1934).

It is unreasonable to believe that the average layman contracting as a lessee of an apartment in a large multi-million dollar hotel would understand that a lease similar to the one signed by appellee's decedent would exempt him only for loss by fire not caused by his negligence. Logically the lease agreement here should be interpreted to mean that appellee's decedent was exempted from liability for all fires normally insured against by the usual fire insurance policy.

It is our conclusion that the effect of the provisions of the lease was to absolve a tenant of any liability for damage to the building caused by a fire other than one attributable to the tenant's intentional and unlawful act.

The judgment of the trial court is therefore

*Affirmed.*