ALASKA INSURANCE COMPANY, an Alaska Corporation, Appellant,

v.

RCA ALASKA COMMUNICATIONS, INC., an Alaska Corporation, Appellee.

No. 4299.

Supreme Court of Alaska.

Feb. 20, 1981.

---

Matt O'Meara and Peter J. Aschenbrenner, Aschenbrenner & Savell, Fairbanks, for appellant.

Timothy R. Byrnes and Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

In this appeal the question is whether a commercial tenant is an "implied co-insured" under its landlord's fire insurance policy, when a provision in the lease requires the landlord to obtain and keep in effect an insurance policy on the leased premises covering loss because of fire. Under the facts of this case, we hold that the tenant is, by legal implications, a co-insured of the landlord's policy, thereby precluding the landlord's insurer from exercising subrogation rights against the tenant.

Bachner Rental Co., Inc. [hereinafter Bachner], as landlord and RCA Alaska Communications, Inc. [hereinafter RCA], as tenant, entered into a one-year commercial lease for a warehouse on October 1, 1976, with possession commencing December 1, 1976. In May of the previous year, Bachner had purchased a three-year policy for fire and extended coverage from appellant insurer, Alaska Insurance Company [hereinafter AIC], protecting its interest in four commercial warehouses, including the structure in question. RCA did not procure additional fire insurance covering its leased warehouse, nor was RCA's name added along with Bachner as an additional insured on the pre-existing policy with AIC.

During the second week of January, 1977, a fire occurred in the rented structure, causing extensive smoke and water damage, and the building was subsequently demolished. AIC paid Bachner for the fire loss pursuant to the insurance policy, and then commenced an action as subrogee of Bachner, contending that RCA, acting through its employees, had negligently caused the fire. At trial, RCA moved for a partial summary judgment on the theory that, as lessee of Bachner, RCA was an implied insured of AIC, thereby precluding appellant AIC from exercising its subrogation rights. The superior court granted a partial summary judgment for RCA. We affirm.

It is a well established rule that "an insurer cannot recover by means of subrogation against its own insured." *Graham v. Rockman*, 504 P.2d 1351, 1356 (Alaska 1972). Since subrogation is an equitable doctrine, equity principles apply in determining its availability. *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398, 403 (1977); *Rock River Lumber Corp. v. Universal Mortgage Corp.*, 82 Wis.2d 235, 262 N.W.2d 114, 117 (1978). As we recognized in *Baugh-Belarde Construction Co. v. College Utilities Corp.*, 561 P.2d 1211, 1214 (Alaska 1977), *quoting Home Insurance Co. v. Pinski Brothers,*

*Inc.*, 160 Mont. 219, 500 P.2d 945, 949 (1972), "[t]o permit the insurer to sue its own insured for a liability covered by the insurance policy would violate . . . basic equity principles, as well as violate sound public policy."

■ Therefore, if we find that the tenant in this case can be considered a co-insured of the landlord, the insurer cannot exercise a right of subrogation against the tenant. In recent years a number of courts have denied a cause of action to landlords and the right of subrogation to their insurers, when the landlord covenants to carry fire insurance on the leased premises, and the fire damage is allegedly due to the negligence of the tenant.[1] Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant "stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim." *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 690 (1979), *citing Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo.1965); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142, 146 (1976). We think the reasoning of the foregoing cases is sound.

The central issue is whether the lease contains a provision clearly establishing the tenant's liability for negligently caused fire damage. In the case at bar, the lease between the parties contains the following provisions whose significance and construction is in dispute:

"I. COVENANTS OF THE LESSOR:

. . . . .

c. Lessor warrants that all facilities and appurtenances are in good condition, and that all repairs required to maintain the premises and buildings in an adequate and suitable condition for the purpose of this lease shall be at Lessor's sole cost and expense . . . [except] those damages arising from the direct negligence on the part of the Lessee to any portion of said facility. . . .

. . . . .

II. COVENANTS OF THE LESSEE:

. . . . .

b. Lessee shall use said premises for lawful business purposes and will leave said premises at the expiration of this lease in as good a condition as received, excepting fair wear and tear and/or loss or damage caused by fire, explosion, earthquake or other casualty; provided that such casualty was not caused by the negligent act of the Lessee, its employees or agents. . . .

c. Lessee agrees to indemnify and hold Lessor harmless from and against loss, damage and liability arising from the negligent act of Lessee, its agents, employees, or clients;

. . . . .

III. MUTUAL COVENANTS OF LESSOR AND LESSEE

. . . . .

b. That this lease shall automatically terminate with no penalty to Lessee in event that the leased space becomes unusable due to fire or other cause;

---

1. *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.*, 59 Cal.App.3d 860, 131 Cal.Rptr. 211, 214–15 (1976); *Cerny-Pickas & Co. v. C. R. Jahn Co.*, 7 Ill.2d 393, 131 N.E.2d 100, 103–04 (1956); *New Hampshire Ins. Co. v. Fox Midwest Theatres, Inc.*, 203 Kan. 720, 457 P.2d 133, 140–41 (1969); *Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo.1965); *United States Fire Ins. Co. v. Phil-Mar Corp.*, 166 Ohio St. 85, 139 N.E.2d 330, 333 (1956); *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okl.App.1975);

*Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142, 146–47 (1976); *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 690–91 (1979).

*See also General Mills, Inc. v. Goldman*, 184 F.2d 359, 365 (8th Cir. 1950), *cert. denied*, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); *Gordon v. J. C. Penney Co.*, 7 Cal.App.3d 280, 86 Cal.Rptr. 604, 606 (1970); *Hardware Mut. Cas. Co. v. Bob White Oldsmobile-Cadillac, Inc.*, 46 Ill.App.3d 722, 5 Ill.Dec. 186, 361 N.E.2d 325, 327 (1977).

c. Lessor agrees to pay all taxes and assessments made against and levied upon said property. Lessor shall obtain and keep in force during the term of this lease a policy or policies of insurance covering loss or damages to the premises providing protection against all perils and risks including but not limited to the classifications of fire, extended coverage, vandalism and malicious mischief. Lessee agrees that if its usage of leased premises should increase the insurance hazard of the premises in any way during the term of said lease, the Lessee shall bear the additional cost of insurance realized by the Lessor. Lessor agrees to provide Lessee adequate documentation to verify that any additional insurance premium increase is in fact due to Lessee's use of said leased premises."

■ AIC contends that the absence of an express exemption for negligent liability and the inclusion of paragraphs I. c., II. b., and II. c. of the lease clearly establish RCA's liability for fire damage caused by its own negligence. In the last analysis the question is whether we should give primacy to the redelivery (II. b.) and indemnity (II. c.) covenants of the lessee, or to the insurance clause of III. c., wherein the lessor promises to obtain insurance covering, *inter alia*, damage to the leased premises caused

by fire. In our view, the redelivery and indemnity provisions relied on by AIC, when read in conjunction with the insurance clause of III. c., fail to clearly establish RCA's liability for fire damage caused by its own negligence.[2]

We believe that in a situation of this type it would be undesirable as a matter of public policy to permit the risk of loss from a fire negligently caused by a tenant to fall upon the tenant rather than the landlord's insurer.[3] *See* R. Keeton, Insurance Law § 4.4(b), at 210 (1971). Since the ordinary and usual meaning of "loss by fire" includes fires of negligent origin,[4] it would contradict the reasonable expectations of a commercial tenant to allow the landlord's insurer to proceed against it after the landlord had contracted in the lease to provide fire insurance on the leased premises. *Rizzuto v. Morris*, 592 P.2d at 690–91; *Monterey Corp. v. Hart*, 224 S.E.2d at 147. We agree with the court in *Sutton v. Jondahl*, 532 P.2d 478 (Okl.App.1975), which stated:

"Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established require that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage

**2.** AIC correctly notes that a majority of the cases cited in note 1, *supra*, also placed emphasis on the exculpatory portion of a "surrender" or "re-delivery" clause which is distinguishable from the surrender clause in the case at bar. *See generally* Annot., 15 A.L.R.3d 786, § 7 (1967 & Supp. 1979). The phrase in II. b., "provided that such casualty was not caused by the negligent act of the Lessee, its agent, employees or clients" *does not appear in those cases cited in note 1 which have denied a landlord's insurer the right to subrogate. Nevertheless, we do not find this provision of the lease conclusive on the question of the tenant's liability for fire losses, and we ascribe correspondingly greater significance to the insurance clause of III. c.

**3.** One policy consideration for not permitting a landlord's insurer to subrogate against the landlord's tenant is reduction of litigation. If a landlord's casualty insurer may seek to recoup

its payments for fire loss by alleging the negligence of the tenant, many commercial fire losses will result in costly litigation. For similar reasons, we held in *Baugh-Belarde Constr. Co. v. College Utilities Corp.*, 561 P.2d 1211, 1215 (Alaska 1977), that a builder's risk policy prohibited the insurer from subrogating against sub-contractors of the insured general contractor.

**4.** *General Mills, Inc. v. Goldman*, 184 F.2d 359, 364–65 (8th Cir. 1950), *cert. denied*, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); *Cerny-Pickas & Co. v. C. R. Jahn Co.*, 131 N.E.2d 100, 103 (Ill.1956); *Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo.1965); *United States Fire Ins. Co. v. Phil-Mar Corp.*, 166 Ohio St. 85, 139 N.E.2d 330, 332 (1956); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142, 147 (1976); *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 690 (1979).

should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it."

532 P.2d at 482.

 Therefore, we hold that if the landlord in a commercial lease covenants to maintain fire insurance on the leased premises, and the lease does not otherwise clearly establish the tenant's liability for fire loss caused by its own negligence, by reserving to the landlord's insurer the right to subrogate against the tenant, the tenant is, for the limited purpose of defeating the insurer's subrogation claim, an implied coinsured of its landlord.

Accordingly, the judgment of the superior court is affirmed.

AFFIRMED.

BOOCHEVER, J., not participating.

RABINOWITZ, Chief Justice, dissenting.

I am in agreement with the general principle set out in the majority opinion—i. e., that, "[a]bsent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.'"

However, here the parties chose to include an express provision establishing the tenant's liability for fires caused by the tenant's own negligence. The majority cites no opinions in which the court has held that the general principle overrules such an express provision, and I would not allow it

to do so here. In my opinion, the public policy considerations involved here are not so overwhelming that the parties ought not to be allowed to contract for a different result according to their own preferences; but the majority's treatment of the language here makes this well-nigh impossible.[1]

My view might be different were this lease a product of a disparity of bargaining power, or similar to a contract of adhesion; but no such claim is made here, and properly so, as neither party can be characterized as unsophisticated in such matters.

I do not read the provisions of the lease as being inconsistent. However, even if they were, I agree with the *Rizzuto* court in its statement that "[o]ur review of the cases in this area leads us to conclude that the intent of the parties is the primary factor considered by the courts in construing exemption clauses." *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 691 (1979). *Rizzuto* was decided after trial *id.* 22 Wash. App. 951, 592 P.2d at 689, based upon "the undisputed testimony of all the parties." *Id.*, 22 Wash.App. 951, 592 P.2d at 691. The instant case is on appeal from a summary judgment, and I think there are still genuine issues of material fact regarding the intent of the parties.

---

1. "The question whether the desired result (that the lessee be given the benefit of the lessor's insurance) should be reached by judicial imposition of such a rule in the absence of statutory or administrative sanctions is debatable. Probably the courts should not so rule if the lease and insurance provisions together clearly express an agreement that the lessor's insurer shall have the right of subrogation." R. Keeton, Insurance Law § 4.4(b), at 210 (1971).

I think that there are two clear provisions establishing the tenant's liability for loss from fires started by its own negligence: Paragraph II(c), which states "[l]essee agrees to indemnify

and hold lessor harmless from and against loss, damage and liability arising from the negligent act of lessee, its agents, employees or clients;" and Paragraph II(b), which requires the lessee to "leave said premises at the expiration of this lease in as good a condition as received, excepting fair wear and tear and/or loss or damage caused by fire, explosion, earthquake or other casualty; provided that such casualty was not caused by the negligent act of the Lessee, its employees or agents . . . ." In my opinion, the lessee by these provisions clearly and unambiguously covenanted to be responsible for fire damage caused by its own negligence.