908 F.2d 974
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harold TATE, Jr., Ronnie Tate, individually and doing
business as Tate Fabricating Company, Plaintiffs-Appellants,
v.
TRIALCO SCRAP, INC., CDM Holding Corporation, doing business
as Drossmet, Hartford Accident & Indemnity
Company, Defendants-Appellees.
 No. 89-5834.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1990.
 
 Before NATHANIEL R. JONES, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellants appeal the final judgment dismissing their complaint in this diversity action for damages to real estate.
 
 I.
 
 2
 Trialco and CDM Holding Company ("CDM"), doing business as Drossmet, entered into a lease with Harold and Ronnie Tate ("Tate") to lease a building in Whitehouse, Tennessee for purposes of processing aluminium dross. Drossmet was first formed as a joint venture between Trialco and CDM. Subsequently, CDM withdrew from the joint venture. The lease required Drossmet to purchase general liability insurance, and Tate to maintain insurance coverage on the building itself. On June 12, 1987, fire caused substantial damage to the building (a total of $141,500.00). Under Tate insurance policy, $141,500.0 was paid by The Reliance Insurance Company (Tates' insurer) and the $1000.00 deductible paid by Tate. Throughout the six months it took to complete repairs, Trialco continued to pay rent under the lease.
 
 
 3
 The pertinent provisions of the lease dealing with building insurance, repair and maintenance, are as follows:
 
 
 4
 8. MAINTENANCE & OPERATIONS. Maintenance of the Building, grounds, and storage buildings shall be the responsibility of the Lessee. Any structural damage inflicted by the Lessee shall be repaired by and at the expense of the Lessee. The Lessor agrees to correct or repair defects in the building structure during the first year of this Agreement. Thereafter, repairs shall be the responsibility of the Lessee unless caused by faulty construction or defective design of the Building or the grounds.
 
 
 5
 10. LIABILITY OF LESSEE. The Lessee shall indemnify Lessor and hold Lessor harmless for all loss, damage, expense and/or penalty arising from any claim or allegations of personal injury or damage to property. In the event the Lessor sells or assigns this lease, the terms of this Agreement shall remain applicable and shall be applied and administered as written and signed by current Lessor.
 
 
 6
 11. DEFAULT. Lessee shall be in default if it fails to make monthly rental payment within ten (10) days of receiving notice of failure to pay from Lessor or if Lessee fails to maintain or insure the Building as herein provided. Upon default, Lessor shall have the right, in addition to any and all other rights it may have, to terminate this lease and take possession of the Building.
 
 
 7
 13. DESTRUCTION OF THE BUILDING. In the event the Building is damaged or destroyed through no fault or negligence of the Lessee and the Lessee's production is reduced by 30% as a result thereof, the Lessee shall be permitted to move and cease rental payments without being in default. In the event Lessee's production is not thereby reduced by 30% or Lessee elects to continue this Lease Agreement despite reduction in production by 30% or more, the rent payable under this lease shall be abated proportionately according to the floor area of the Building which is unusable by the Lessee. Such abatement shall continue for the period commencing with such damage or destruction and ending with the completion by the Lessor of such work or repair and/or construction to make the Building, or the damaged portion thereof, usable [sic] by the Lessee.
 
 
 8
 14. INSURANCE. Throughout the terms of this lease, the Lessor shall pay premiums for insurance coverage on the Building only. Any damage caused by the Lessee shall be paid for by the Lessee. The Lessee shall provide Certificate of General Liability Insurance up to $500,000.00 with one million dollar umbrella.
 
 
 9
 J.App. at 104. Final Lease, Exhibit 3 (emphasis added). This lease was adapted by Tate from a previous lease between the parties and approved by Trialco. Testimony from the parties on their intent upon entering the lease agreement is contradictory. Harold Tate, Jr. testified that his intent at the time the lease was executed was "to make sure that it was clear that anything that they tore up or anything that was destroyed by them, it was their baby." J.App. at 76. David Morris, who represented Drossmet during the lease transaction, testified that Drossmet was to provide the liability insurance and Tate was to provide insurance on the building itself, and that such insurance was for their mutual benefit. J.App. at 89-91. Tate and Reliance now seek to recover the amount expended on the building repairs.
 
 
 10
 Tate and Reliance originally filed their complaint in the Chancery Court for Robertson County, Tennessee against Trialco Scrap, CDM, and Hartford Accident and Indemnity Company ("Hartford"). At the time of the fire, Hartford provided certain insurance coverage to Trialco in connection with the Drossmet operation. On July 17, 1988, the complaint was removed to United States District Court for the Middle District of Tennessee. Trialco, CDM and Hartford filed motions for summary judgment upon completion of discovery. The district court granted only Hartford's motion for summary judgment. CDM was voluntarily dismissed by Tate and Reliance due to questions of diversity jurisdiction. Judge Morton conducted a bench trial on April 24, 1989 both on the original complaint and Trialco's counterclaim. On June 15, 1989, the court entered an order dismissing the complaint and counterclaim.
 
 
 11
 The district court held that in the absence of any controlling decision by Tennessee courts, Tennessee would follow the majority rule which states that if the lessor carries insurance on the building as provided for in the lease, there is a presumption that such insurance is for the benefit of both the lessor and the lessee. The court dismissed both the Tate complaint and Trialco's counterclaim. This timely appeal followed.
 
 II.
 
 12
 Tate and Reliance argue that the district court erred in determining that there is no controlling Tennessee authority on the question of whether Tate's obligation to provide insurance for the building under the lease accrues both to the benefit of the lessor and lessee. They cite to Anderson v. Miller, 96 Tenn. 35, 33 S.W. 615 (1896) in which a landlord's fire insurance company was permitted to recover from a tenant responsible for a fire loss, and Miller v. Russell, 674 S.W.2d 290 (Tenn.App.1983) in which the court held that a named loss payee is an insured under the policy and that "no right of subrogation exists where the wrongdoer is also an insured under the same policy.' " Id. at 291 (citation omitted). The district court stated:
 
 
 13
 [T]he court certainly finds no fault with the general proposition that an insurance company may not seek subrogation against an insured.... [T]hat principle in itself, however, says nothing about whether under the facts of this case, the defendants may be considered an implied coinsured under Reliance's policy. If the defendants are implied coinsureds, then, of course judgment must be entered in their favor.
 
 
 14
 J.App. at 22. However, the district court correctly determined that neither Anderson nor Miller are on point as to the nature of Tate's obligation under the lease agreement, and whether Trialco is relieved of the responsibility for negligent destruction of the leased premises. J.App. at 21-22. The district court found that the lease in the instant case contained two critical components:
 
 
 15
 First, the lease on more than one occasion speaks of the lessee being responsible for damage inflicted by the lessee ... [T]his will be deemed generally as the repair obligation. Second, the lease requires the lessor to purchase insurance coverage on the building. Obviously, the first provision seems to hold the tenant responsible under the present situation, and the second seems to relieve the tenant of this burden.... [N]either Anderson nor Miller offer any guidance for resolving this kind of problem.
 
 
 16
 J.App. at 23.
 
 
 17
 Because the Tennessee Supreme Court has not addressed the issue in controversy in the instant case, the district court was forced discern what the Tennessee Supreme Court would do, and to make a decision from "all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the majority rule." Grantham and Mann Inc. v. American Safety Products, Inc., 831 F.2d 596, 608 (6th Cir.1987). We overturn a district court's conclusions on questions of state law only if they are "clearly wrong". Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir.1980).
 
 
 18
 The district court discussed at length Evco Corp. v. Ross, 528 S.W.2d 20 (Tenn.1975) as the most relevant Tennessee division. In Evco, the Tennessee Supreme Court held that a lease rendered the lessor responsible for restoration of a structure damaged by fire, and noted that the lessor had "expressly covenanted with the tenant that [the lessor] would carry fire insurance for any damage to the building during the term of the lease, and simultaneously agreed to make all major repairs." Id. at 24. The district court reasoned that although the repair obligations in Evco were opposite those in the instant lease, the Evco court relied heavily on the provision obligating the lessor to carry fire insurance. The district court also examined St. Paul Surplus Lines v. Bishop's Gate Insurance Co., 725 S.W.2d 948 (Tenn.App.1986) in which the insurance and repair components of the lease were the opposite of Evco. In St. Paul Surplus Lines, the court held that where the lease agreement required the lessee to obtain and maintain fire insurance, the lessee must use the proceeds from such insurance to make repairs to the leased property caused by fire. As with Evco, the construction of the insurance provision in St. Paul was in conjunction with repair provisions which placed the burden on the same party. However, in instant case, the burden of the insurance provision is on the lessor while the burden of the repair provision is on the lessee. The district court concluded that while Evco and St. Paul "show that Tennessee courts recognize the exculpatory responsibility-shifting nature of lease provisions which require a certain party to purchase insurance," it was necessary to examine law from other jurisdictions in order to determine which provision--the insurance purchase clause or the repair provisions--should be given preeminence. J.App. at 30.
 
 
 19
 The district court examined case law from other jurisdictions and noted that the modern trend is to relieve the lessee from liability to the landlords' insurer for his own negligence, absent an express provision to the contrary. This excerpt from Alaska Insurance v. RCA Alaska Communications, Inc., 623 P.2d 1216, 1218 (Alaska Sup.Ct.1981) illustrates the majority rule:
 
 
 20
 In recent years a number of courts have denied a cause of action to landlords and the right of subrogation to their insurers, when the landlord covenants to carry fire insurance on the leased premises, and the fire damage is allegedly due to the negligence of the tenant. [Liberty Mut. Fire Ins. v. Auto Spring Supply Co., 59 Cal.App.3d 860, 131 Cal.Rptr. 211, 214-15 (1976); Cerny-Pickas & Co. v. C.R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100, 103-04 (1956); New Hampshire Ins. Co. v. Fox Midwest Theaters, Inc. 203 Kan. 720, 457 P.2d 133, 140-141 (1969) Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 278 (Mo.1965); United States Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330, 333 (1956); Sutton v. Jondahl, 532 P.2d 478, 482 (Okl.App.1975); Monterey Corp. v. Hart, 216 Va. 843, 224 S.E.2d 142, 146-47 (1976); Rizzuto v. Morris, 22 Wash.App. 951, 592 P.2d 688, 690-91 (1979). See also General Mills, Inc. v. Goldman, 184 F.2d 359, 365 (8th Cir.1950), cert. denied, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); Gordon v. J.C. Penney Co., 7 Cal.App.3d 280, 86 Cal.Rptr. 604, 606 (1979); Hardware Mut. Cas. Co. v. Bob White Oldsmobile-Cadillac, Inc., 46 Ill.App.3d 722, 5 Ill.Dec 186, 188, 3651 N.E.2d 325, 327 (1977).] Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.'
 
 
 21
 The district court also determined that of the ten jurisdictions which have considered this issue in the 1980's, only one does not follow the majority rule.
 
 
 22
 Finally, the district court examined the public policy behind the majority rule. The court noted that sound business practice incorporates the cost of purchasing building insurance into the lease rate, and that "if the lessee pays for it, it is then only natural for him to expect to benefit." J.App. at 52. The district court determined that in the instant case, "the insurance policy itself leaves no room for the argument that the tenant did not pay for insurance coverage for his own negligence." J.App. at 51. The rates charged by Reliance reflected the increased coverage to allow for loss due to tenant's negligence, and the policy contained a provision which gave the lessor complete freedom to release the tenant from liability even after the loss had occurred. Id. It would be "an undue hardship to require a tenant to insure against his own negligence, when he is paying, through his rent, for the fire insurance which covers the premises," 'and then deny him the benefit of such insurance coverage. Safeco Ins. Co. v. Capri, 705 P.2d 659, 661 (Nev.1985). We therefore agree with the district court that the Tennessee courts would follow the majority rule.
 
 III.
 
 23
 Tate and Reliance argue that even if the Tennessee Supreme Court were to adopt the majority rule, the district court applied it incorrectly in the instant case. They claim that the lease provision which requires Tate to purchase building insurance is unenforceable and that the repair provision determines that they should recover for Trialco's negligence in starting the fire. They also claim that the lease clearly expresses the parties' intent that the building insurance purchased by Tate was for the benefit of Tate only. They cite no authority for the proposition that the majority rule requires an enforceable obligation to buy insurance. However, the purpose of the majority rule is to supply a presumption, in the absence of clear expression to the contrary, that any insurance contemplated in a lease agreement inures to the mutual benefit of the lessor and lessee. In the instant case, if the landlord and tenant did not intend the insurance to be of mutual benefit, there would be no purpose for its inclusion in the lease. It would be illogical and unnecessary for the landlord to agree with the tenant to carry building insurance for the landlord's sole benefit. See Aetna Insurance Co. v. Craftwell, Inc., 757 F.2d 1030, 1031 (9th Cir.1985) (applying Idaho law and noting that "[t]o determine whether the tenant should be considered a co-insured, courts have looked to whether the insurance policy was obtained for the benefit of the tenant as well as the landlord."). Given that in the instant case the parties agreed, and Tate purchased, building insurance, the enforceability of that provision is not at issue. What is at issue, and what the district court determined, was that the parties intended the building insurance to be of mutual benefit. Certainly Trialco was required by the lease only to insure its own property, and to purchase general liability coverage to protect Tate against personal liability to third parties.
 
 
 24
 Only six paragraphs of the lease contain any language relevant to the parties' intent concerning the building insurance procured by Tate. Paragraph Six gives Drossmet the option of purchasing the property at the end of the lease term. Paragraph Eight provides for maintenance and repair and requires that any structural damage inflicted by the Lessee shall be repaired by and at the expense of the lessee. Paragraph Ten provides for indemnity of the lessor by the lessee or any claim of personal injury or damage to the property. Paragraph Eleven provides for the events of default which include failure by the lessee to maintain or insure the building as provided in the lease. Paragraph thirteen concerns the destruction of the building. Paragraph Fourteen concerns insurance. It reads:
 
 
 25
 INSURANCE. Throughout the terms of this lease, the Lessor shall pay premiums for insurance coverage on the Building. Any damage caused by the Lessee shall be paid for by the Lessee. The Lessee shall provide Certificate of General Liability Insurance up to $500,00.00 with a one million dollar umbrella.
 
 
 26
 J.App. at 113.
 
 
 27
 The district court determined that the statement that "[a]ny damage caused by the Lessee shall be paid for by the Lessee," is not a clear expression that the lessor's fire insurance is not for the benefit of the lessee, because it could simply refer to damage not covered by insurance, or it may have been intended as a preface to the following sentence regarding general liability. Likewise the general repair and maintenance obligations in the lease are not a sufficient manifestation of contrary intent. See, Alaska Insurance Co., 623 P.2d at 1219 n. 2 (Alaska 1981). Because the exculpatory effect of the insurance clause can be construed in harmony with all Trialco's repair and indemnity obligations, we hold that the district court correctly determined there was no clear expression of contrary intent in the lease.
 
 IV.
 
 28
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 29
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 30
 Under the modern majority rule, as I understand it, where a lease agreement obligates the landlord to buy fire insurance and "does not clearly establish the tenant's liability for fire loss caused by his own negligence, the tenant is, for the limited purpose of defeating an insurer's subrogation claim, an implied coinsured of the landlord." Safeco Insurance Co. v. Capri, 705 P.2d 659, 661 (Nev.1985). An insurance company cannot assert a subrogation claim against its own insured, see Miller v. Russell, 674 S.W.2d 290, 291 (Tenn.App.1983), so such a claim will not lie against the tenant insofar as the tenant is an "implied coinsured." And absent a lease provision making the tenant liable for his own negligence, the tenant is an implied coinsured insofar as the landlord has agreed to obtain fire insurance for the parties' mutual benefit. Cf. Alaska Insurance Co. v. RCA Alaska Communications, Inc., 623 P.2d 1216, 1218 (Alaska 1981):
 
 
 31
 "Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.' " (Citations omitted.)
 
 
 32
 Although there is no Tennessee authority directly in point, the district court concluded, in the case at bar, that "the Tennessee Supreme Court would adopt the modern rule that an agreement for the lessor to purchase insurance will be presumed to be for the mutual benefit of both parties unless there is a clear expression of contrary intent." (Emphasis supplied.) I have no reason to quarrel with this conclusion. Unlike the district court, however, and unlike my colleagues here, I believe that there was "a clear expression of contrary intent" in this case. The insurance clause of the lease agreement clearly makes the tenant liable for loss from (among other things) negligently caused fires. Accordingly, in my view, the modern rule would not bar the landlord's fire insurance company from recovering on a subrogation claim brought against the tenant for negligence in starting the fire.
 
 
 33
 The pertinent provision of the lease is paragraph 14, captioned "INSURANCE." The first sentence of that paragraph obligates the lessor to pay premiums for insurance coverage on the building. If there were nothing more, this obligation could be presumed, under the modern rule, to have been for the mutual benefit of both parties not only in situations where the building might be damaged by the negligence of others, or by Act of God, but also in situations where damage might result from the lessee's negligence.
 
 
 34
 There is more, however. The very next sentence of the "INSURANCE" provision says, in the plainest of terms, that "[a]ny damage caused by the Lessee shall be paid for by the Lessee." (This is not a "surrender" or "re-delivery" clause, which is what the Alaska Supreme Court dealt with in Alaska Insurance, see 623 P.2d at 218 and 219 n2. This sentence is an integral part of the insurance clause itself, and as such it has no analogue in Alaska Insurance, Safeco Insurance, or Miller v. Russell.)
 
 
 35
 Tennessee law makes it reasonably clear, I think, that the phrase "any damage" is comprehensive enough to include damage caused by the tenant's negligence. See Chazen v. Trailmobile, Inc., 384 S.W.2d 1, 4 (Tenn.1964) (landlord's waiver of all right of recovery for "any loss resulting from fire" extends to fire loss caused by tenant's negligence). It is far from self-evident that a sentence saying the lessee shall pay for "any" lessee-caused damage can properly be read as suggesting that "any damage caused by the lessee shall not be paid for by the lessee except insofar as the damage exceeds the lessor's insurance coverage."
 
 
 36
 The district court thought that the second sentence of paragraph 14 "could very naturally have been included simply as an explanation that damage not covered by the insurance, whether to the building or to some other property, must be paid for by the lessee." Such a reading does not seem very natural to me, nor does it seem consistent with the Tennessee Supreme Court's holding in Chazen v. Trailmobile. The holding in Chazen, on the other hand, is entirely consistent with what the Tennessee Supreme Court said in Evco Corp. v. Rose, 528 S.W.2d 20, 23 (Tenn.1975), when it declared that "the words contained [in the lease] must be given their ordinary and customary usage, and not a strained or unnatural interpretation." Cf. St. Paul Surplus Lines Insurance Co. v. Bishops Gate Insurance Co., 725 S.W.2d 948, 951 (Tenn.App.1986) ("In construing contracts, the words expressing the parties' intention should be given their usual, natural and ordinary meaning [citation omitted], and neither party is to be favored in the construction").
 
 
 37
 The district court went on to suggest that "the provision could have been inserted as a preface to or explanation of the next requirement[,] which was for the Lessee to provide a certificate of general liability insurance." (The third and final sentence of paragraph 14 says that "[t]he Lessee shall provide Certificate of General Liability Insurance up to $500,000.00 with one million dollar umbrella.") But if the second sentence was inserted as a "preface" to the third, this would, if anything, buttress the conclusion that the parties meant what they said when they agreed that "any damage caused by the Lessee [including, per Chazen, damage caused negligently] shall be paid for by the Lessee." It makes the second sentence even "stronger," to borrow a term from Chazen, 384 S.W.2d at 4, if the parties contemplated not only that the lessee would be liable for lessee-caused damage, but also that the lessee would carry liability insurance for "up to $500,000.00 with one million dollar umbrella."[1]
 
 
 38
 I know of no persuasive public policy reason why the landlord's fire insurance company, after paying the landlord's claim, should not be permitted to recover from the negligent tenant, and why the negligent tenant, in turn, should not be permitted to recover from its own liability insurance carrier. It bears emphasis, in this connection, that it was not the courts that required the tenant to purchase insurance covering its own negligence; that was a requirement imposed by the parties themselves.
 
 
 39
 The parties having entered into a lawful contract, I should have thought the pertinent public policy consideration would be that the reasonable expectations of the contracting parties ought to be honored--that the lease contract ought to be enforced in accordance with its terms.[2] And if the insurance clause of the lease contract says that the lessee shall pay for any damage caused by the lessee, I see no reason, under the law of Tennessee, why the lessee should not be required to do so.
 
 
 
 [1]
 The lessee apparently obtained the required liability coverage from the Hartford Accident and Indemnity Co., which company was joined as a defendant in the original subrogation action. The Hartford moved for summary judgment on the ground that "none of the plaintiffs has any standing to bring an action against Hartford directly." The plaintiffs--Reliance Insurance Co. and the landlord--then agreed to the dismissal of their claim against the Hartford. The voluntary dismissal by Reliance and its insured in no way suggests that the lessee does not have insurance protection in respect of damage caused by its own negligence. If it paid for such protection, the lessee is presumably entitled to receive it--and the practical result of the final judgment in this case appears to be a windfall for the Hartford, which gets to keep the lessee's liability insurance premiums without having to pay for the consequences of the lessee's negligence
 
 
 [2]
 The parties' testimony as to their intent in entering into the lease agreement, if such testimony is admissible, does not strike me as contradictory. That the landlord wanted "to make sure that it was clear that anything that they [the tenant] tore up or anything that was destroyed by them, it was their baby" is not inconsistent with the testimony of the tenant's representative that the tenant had an interest which he understood would be protected under a fire insurance policy provided by the landlord for their mutual benefit. Fires in leased premises are not always caused by the lessee, and it might well have been to the tenant's advantage for the landlord to have fire insurance coverage in place if the building had burned because of defective wiring, for example, or because of fire spreading from other premises, or because of the negligence or intentional misconduct of some third party