PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ALLSTATE INSURANCE COMPANY, a/s/o
Hunters Ridge Condominium
Owners Association, Incorporated,
        *Plaintiff-Appellant,*

v.                                                      No. 05-1859

JENNIFER FRITZ; CLAY NICHOLAS
PENDLETON; SARAH ELIZABETH KUHN
NELSON,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CA-03-94-3)

Argued: May 24, 2006

Decided: June 26, 2006

Before NIEMEYER and MOTZ, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Martin P. Duffey, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellant. Humes Jefferson Franklin, III, WHAR-

TON, ALDHIZER & WEAVER, P.L.C., Staunton, Virginia; Caroline D. Bragg, CATTANO LAW FIRM, Charlottesville, Virginia, for Appellees. **ON BRIEF:** James W. Barkley, Elizabeth M. Ayyildiz, MORIN & BARKLEY, Charlottesville, Virginia, for Appellant. John P. Cattano, CATTANO LAW FIRM, Charlottesville, Virginia, for Appellee Jennifer Fritz.

## OPINION

NIEMEYER, Circuit Judge:

While attending James Madison University in Harrisonburg, Virginia, Jennifer Fritz and Sarah Nelson signed a lease for Apartment H of a 12-unit apartment building owned by Hunters Ridge Condominium Owners Association, Inc. ("Hunters Ridge" or "Owner"). In the early morning hours of May 12, 2002, during the term of the lease, a fire erupted on the wooden balcony of Fritz and Nelson's apartment, causing over $700,000 in property damage to Apartment H and to the apartment building.

Allstate Insurance Company, Hunters Ridge's property insurer, paid the loss, and, as subrogee of Hunters Ridge, commenced this action against Fritz, Nelson, and Clay Pendleton, who had been Fritz's guest at Apartment H. Before the fire, Pendleton had been refinishing the stock of his gun on the apartment's balcony, using linseed oil, and officials believed that a spontaneous combustion of a linseed oil-soaked rag was the cause of the fire. In the suit, Allstate contended that all three defendants were liable for negligence in causing the fire and that Nelson and Fritz were also liable under the terms of their lease. After discovery, Pendleton settled with Allstate, and Nelson and Fritz filed motions for summary judgment. The district court granted their motions, reading the lease as absolving Fritz and Nelson of all negligence liability and concluding that, in any event, Allstate had failed to present evidence sufficient to show that Fritz and Nelson were negligent.

On Allstate's appeal, we affirm the district court's conclusion that the evidence in the record is insufficient to prove negligence on the

part of Fritz and Nelson. But we conclude that the lease nonetheless imposes liability on Fritz and Nelson for damage to Apartment H caused by any negligence of Pendleton, their guest. Accordingly, we reverse that portion of the district court's judgment and remand for further proceedings on the tenants' lease liability.

I

In early 2001, Fritz and Nelson signed an 11-1/2 month lease for Apartment H at 1366 Hunters Road in Harrisonburg, to commence on August 15, 2001, and continue until July 30, 2002. Apartment H was a second-floor apartment and one of 12 apartments in the building. The lease designates Fritz and Nelson collectively as the "Tenant" and refers to Apartment H as the "property" leased. Thereafter, the lease refers to "property" and "premises" interchangeably. The lease provides, unremarkably, that "Tenant shall not remodel or make any structural changes, alterations or additions to the premises"; that "Tenant shall be responsible for general upkeep of the premises"; and that "at the expiration of the lease term Tenant shall surrender the premises in as good condition as they were at the commencement of this lease." If during the lease the premises were to be rendered "totally unfit for occupancy" by reason of a number of enumerated external forces, including fire and act of God, the lease provides that its term would immediately cease. During the term of the lease, however, the "Tenant [was] responsible for . . . all costs for repairs . . . resulting from . . . negligent actions or omissions of Tenant or Tenant's guests." As to that obligation, as well as every other obligation in the lease, Paragraph 25 provides that "if two or more individuals shall execute this lease as 'Tenant,' the liability of each such individual to pay rent and perform all of Tenant's obligations hereunder shall be deemed to be joint and several." That paragraph was modified by an "Addendum," which provides that "each Tenant that signs a Lease Agreement for the above stated property [Apartment H] during the term of this lease shall be jointly and equally responsible for any and all damages to the Property." The lease provides that it is to be construed according to Virginia law.

On May 11, 2002, during the term of the lease, Pendleton asked Fritz, who was his friend, if he could use Apartment H to clean his Civil War reenactment equipment, which he had been storing in

Fritz's storage locker. Even though neither Fritz nor Nelson was going to be at the apartment that day, Fritz gave Pendleton permission to use the apartment to clean his gear. During that day, Pendleton washed his uniform, cleaned his utensils, and refinished the stock of his replica musket. To do the refinishing, Pendleton stripped the varnish off the stock with a varnish stripper sprayed from an aerosol can, sanded it, and applied linseed oil to it. To remove the stripper from the stock and to apply the linseed oil, Pendleton used rags made from a cotton tee shirt. When he had finished, at around 8:00 p.m., Pendleton left the rags on the balcony, together with the aerosol can and the can of linseed oil.

Between midnight and 1:30 a.m. on May 12, 2002, both Fritz and Nelson returned to the apartment. Before going to bed, Nelson smoked a cigarette on the balcony, which she claims to have extinguished in a water-filled ashtray. At around 4:00 a.m., a smoke alarm woke Nelson, and her screams woke Fritz. When they discovered a fire on their balcony, they called 911 and fled the building. The fire did substantial damage not only to Apartment H but also to the apartment building before it was extinguished.

Fire investigators concluded that the most likely cause of the fire was a spontaneous combustion of the linseed oil-soaked rag that Pendleton had left on the wooden balcony. Linseed oil releases heat as it oxidizes, and if rags soaked in the oil are not properly ventilated, the heat can increase to the ignition temperature of the rags.

After paying Hunters Ridge $700,000 for the loss, Allstate commenced this action against Fritz, Nelson, and Pendleton, claiming that they were liable to Hunters Ridge for the loss. Specifically, Allstate alleged that Pendleton was negligent in using and disposing of the linseed oil. It alleged that Fritz and Nelson were negligent in permitting Pendleton to use the linseed oil in their apartment and in failing to supervise him and inspect his work area. Allstate alleged that all three defendants should have known that linseed oil constitutes a fire hazard and that each could have prevented the fire. Finally, Allstate alleged that Nelson and Fritz were responsible for the property damage under the terms of their lease with Hunters Ridge.

After discovery, Pendleton settled with Allstate, and Allstate dismissed its claims against Pendleton. Fritz and Nelson filed motions

for summary judgment, which the district court granted. The court concluded that the lease, "taken as a whole, indicates that the parties intended that tenants should not be liable for fires caused by their own negligence." Alternatively, the court concluded that "if Defendants were liable for fires created by their negligence, Plaintiff's case would not survive summary judgment [because] there is simply not sufficient evidence from which the jury could find that either Fritz or Nelson acted negligently." With respect to liability imposed by the lease on the tenants for the negligence of their guests, the court concluded that the relevant lease provision was "inescapably aimed at the normal, day-to-day maintenance that is necessary to keep the apartment functional, good looking, and clean. . . . This limited maintenance language is entirely silent upon more serious matters such as destruction of the premises by fire."

From the district court's judgment in favor of Fritz and Nelson, Allstate filed this appeal.

## II

Allstate contends that the district court erred as a matter of law (1) in construing the lease to eliminate tenants' liability for "fires caused by their own negligence," and (2) in concluding that the provision imposing liability on "Fritz and Nelson for [their guests' negligence was] not applicable here because . . . it only applie[d] to negligence relating to day-to-day minor maintenance and repairs." Allstate argues that insofar as the district court reached those conclusions by implication from clauses in the lease that provide (1) that the tenant need not obtain first-party property insurance for the building and (2) that destruction of the property by fire, act of God, or other external source ends the lease, the court simply misread those clauses. Finally, Allstate contends that the district court also misread the lease in limiting the tenants' obligation for guests' negligence to simple day-to-day maintenance matters.

At the outset, we agree with the district court that Virginia law applies and that, in particular, the principles of *Monterey Corp. v. Hart*, 224 S.E.2d 142 (Va. 1976), are directly relevant. In *Monterey*, the tenant negligently burned down an apartment building, leading the landlord to sue the tenant's estate for damages. The court announced

the principle that a tenant's common law liability for losses due to his negligent, reckless, or willful acts is preserved absent a provision in the lease to the contrary. In the case before us, however, the district court flipped the presumption and noted that because no provision in the Hunters Ridge lease expressly addressed Fritz and Nelson's common law liability for negligently started fires, Fritz and Nelson's common law liability for negligently started fires was abrogated. The district court stated that because the lease "conspicuously chooses not to state that tenants remain liable for destructive fires caused by their own negligence, despite several golden opportunities to do so," Fritz and Nelson had no common law responsibility for negligence.

Of course, that application of *Monterey* is inconsistent with *Monterey*, which requires an express provision in a lease only to modify, expand, or abridge the tenant's common law negligence liability. If the lease is silent about common law liability, the liability is preserved. In this case, the lease does not abrogate negligence liability; rather, it explicitly reinforces that liability. Paragraph 7(b) of Fritz and Nelson's lease with Hunters Ridge provides that Fritz and Nelson are responsible for "all costs for repairs . . . resulting from . . . negligent actions or omissions of [themselves] or [their] guests." The district court dismissed the applicability of this provision because the provision "when taken in its context" does not address the "issue of destruction of property due to negligently caused fire"; rather, the court concluded, all of the tenants' obligations under Paragraph 7 are "inescapably aimed at the normal, day-to-day maintenance that is necessary to keep the apartment functional, good looking, and clean."

This conclusion, however, simply ignores the plain language of Paragraph 7. The tenants' obligations under Paragraph 7 are stated in full as follows:

> 7. MAINTENANCE AND REPAIRS. Tenant shall be responsible for general upkeep of the premises, together with any furnishings and window coverings (if provided by Owner), including, but not limited to, waxing of floors, regular and routine vacuuming, cleaning of carpets and furniture, cleaning kitchen appliances and bathroom fixtures, and any other work which contributes to the general good

appearance, repair, and cleanliness of the premises. *Further, Tenant is responsible for*:

(a) Yard work and snow and ice removal unless premises is located in an apartment or condominium complex or in a planned development where these services may be provided by Management. Tenant shall not allow grass to exceed 3 inches. Management reserves the right to have grass cut at the tenant's expense, if not maintained.

(b) *All costs for repairs* or maintenance *resulting from the reckless or negligent actions* or omissions of Tenant or Tenant's guests or pets (if pets allowed see No. 10 hereof).

(c) *Damages to premises* (or adjacent property) *caused by bursting pipes* from failure to disconnect hoses or turning off outside hydrant in cold weather or Tenant's failure to keep sufficient heat operating during cold periods, stoppage of water closets, drains, or sewer systems.

(d) *Damages resulting from the use of supplemental heating equipment*. Tenant understands that Management discourages the use of such supplemental equipment and that Tenant uses it at his own risk.

(Emphases added).

First, the title of Paragraph 7 indicates that the paragraph addresses "maintenance *and* repairs" as distinct concepts. Second, the text of the paragraph confirms the distinction, imposing separate obligations on the tenants for each, even though the obligations partly overlap. Specifically, the first sentence gives the tenants the responsibility to *perform* maintenance generally, providing that the tenant is responsible for "general upkeep of the premises" and similar performance responsibilities. The second sentence addresses the *costs* of both mainte-

nance and repairs, stating, "Further, Tenant is responsible for . . . all costs for repairs or maintenance . . . resulting from . . . negligent actions." There is nothing in the second sentence that *limits* the tenants' responsibility to pay costs for only day-to-day maintenance costs. Indeed, the second sentence obligates the tenant to pay the costs of both maintenance *and repairs*. This is made clear not only by the language of subparagraph 7(b) but also by subparagraphs (c) and (d), which explicitly make the tenants responsible for the sort of catastrophic damages that the district court believed Paragraph 7's title and first sentence belied. What is clear is that the performance of "maintenance" and the payment of costs of "repairs or maintenance" are unambiguously treated as distinct obligations imposed on tenants by Paragraph 7. And the obligation to pay costs is not only for routine maintenance but also for repairs of all kinds resulting from tenants' negligence.

In short, Paragraph 7(b) expressly and unambiguously affirms the tenants' common law liability for their own negligence. The district court's inquiry should have begun and ended with this provision when addressing Fritz and Nelson's negligence. Instead, the district court placed the cart before the horse by finding, first, no provision specifically dealing with responsibility for fire negligence, then limiting Paragraph 7(b) to be consistent with the inference drawn from that silence, namely, that the lease exculpates the tenants of their common law liability for fire due to negligence. The reason no provision addresses the narrow matter of tenants' fire negligence is that Paragraph 7(b) broadly encompasses *all* negligence.

Furthermore, because the second sentence of Paragraph 7 is not limited to performing maintenance, but also addresses the cost of all repairs (both serious repairs and maintenance repairs), the court also erred in failing to recognize the tenants' contractual liability for *their guests*' negligence. Although this duty was one of those common law duties abrogated in Virginia by statute, *see* Va. Code Ann. § 55-226 (2005) (providing that a lessee "without fault or negligence on his part" shall not be held liable for damage to leased buildings), that statutory provision expressly allows for such liability if there is an express lease provision "showing it to be the intent of the parties that [the tenant] should be so bound." *Id.*; *see also Monterey*, 224 S.E.2d at 144. The Hunters Ridge lease could not be clearer in providing that

the tenants are liable for "all costs . . . resulting from the reckless or negligent actions or omissions of . . . Tenant's guests." Accordingly, we hold that Fritz and Nelson are contractually liable to pay the costs for repairs resulting from the reckless or negligent actions or omissions, if any, of Pendleton.

Because Fritz and Nelson are responsible for the negligence of Pendleton only by reason of the lease, we conclude that the extent of that responsibility is limited to damage to the "property," which is defined by the lease to be Apartment H. It would make no sense to accommodate Allstate's contention that Paragraph 7 of the lease imposes liability on Fritz and Nelson for Pendleton's negligence *in all respects*, even beyond Apartment H. If this were so, Fritz and Nelson would become contractually liable for the costs of repairs to Hunters Ridge's service truck if Pendleton ran into the truck on the street while Pendleton was their guest. We conclude that the obligation in Paragraph 7(b) may reasonably be construed only to obligate the tenants for repairs to Apartment H — the "property" covered by the lease.

Finally, it is worth noting that Fritz and Nelson signed an Addendum to the lease in which they agreed to be "jointly and equally responsible for any and all damages to the property." This Addendum is significant because, even though Pendleton was a personal guest of Fritz and not Nelson, Nelson is nonetheless responsible as a tenant to pay the cost of repairs caused by the negligence of a guest of "Tenant," defined to be both Fritz and Nelson.

In sum, the Hunters Ridge lease does not absolve Fritz and Nelson of their common law negligence liability; in fact, it expressly affirms it. In addition, the lease extends the tenants' liability insofar as it imposes liability on them for the negligence of their guests. But this lease-created liability is limited to the cost of repairs for the unit leased, not for the entire building. Finally, because Fritz and Nelson are both the "Tenant," they are "jointly and equally" responsible for each other's obligations under the lease.

In light of these conclusions, we reverse the district court's interpretation of the lease and that portion of its judgment insofar as the court found for Fritz and Nelson on Allstate's claims on the lease. We

remand this case to the district court for the determination of whether Pendleton was negligent and, if so, what damages Pendleton caused *to the unit*. To the extent that Allstate has already received some funds from Pendleton for the loss, the district court will need to address whether credit should be given for those funds with respect to Allstate's contract claims against Fritz and Nelson and in what amount.

### III

The district court also granted summary judgment to both Fritz and Nelson on Allstate's common law negligence claims. Reviewing the record, we agree with the district court that Allstate failed to present evidence sufficient to show that either Fritz or Nelson was personally negligent. Accordingly, we affirm that portion of the district court's judgment.

In so affirming, we recognize that only Nelson filed a motion for summary judgment on the negligence claim against her. Yet finding no evidence of negligence against Fritz, the district court *sua sponte* also entered summary judgment on Allstate's negligence claim in favor of her. Allstate now argues that we should vacate the summary judgment in favor of Fritz because Allstate lacked *the opportunity* to brief the merits of its negligence claim against her.

District courts have an inherent power to grant summary judgment *sua sponte* so long as the party against whom summary judgment is entered has notice "sufficient to provide [it] with an *adequate opportunity* to demonstrate a genuine issue of material fact." *U.S. Development Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989) (emphasis added). In this case Allstate did have such notice and opportunity based on Fritz and Nelson's motions for summary judgment on the lease claims. Because the lease establishes a joint obligation on both tenants for damages resulting from either tenant's negligent actions, a claim that Allstate advanced, both tenants' motions for summary judgment on Allstate's claim for breach of contract gave Allstate the opportunity to address Fritz's negligence.

Accordingly, the judgment of the district court is

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.*